

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John H. Winters
Executive Director
State Department of Public Welfare
Austin 3, Texas

Dear Sir:                    Opinion No. O-6549
                             Re: Guardianships of persons
                                 receiving funds from the
                                 State and/or Federal
                                 Government

        Your request for opinion has been received
and carefully considered by this department. We quote
from your request as follows:

        "We shall appreciate your considera-
    tion and opinion as to the interpretation the
    department should place upon Senate Bill 125,
    Acts of the 47th Legislature, Regular Session.

        "In October 1942 we asked for an
    opinion and interpretation of this law in rela-
    tion to the authority of a guardian who was
    appointed under the special provisions of the
    law to act as the guardian in respect to all of
    the estate of the ward. Reference is made to
    your Opinion No. O-4949.

        "The question now confronting the
    Department is in relation to the position to be
    taken by the Department when a guardian, who has
    been appointed in conformity with Senate Bill
    125, is discharged or dies. When a guardian is
    appointed by the Court and the Department re-
    ceives official Letters of Guardianship or the
    official Certificate from the County Clerk, all
    subsequent checks are made payable to the guardian.
    This is true when the guardianship is made in
    compliance with Senate Bill 125 or is predicated

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

upon a lunacy trial. If there has been a lunacy trial and the recipient adjudged insane, the Department requires either a certificate from the Clerk showing the restoration of the sanity of the recipient or new Letters of Guardianship. The Department does not attempt to influence the decision as to which procedure would be applicable as this is left entirely to the discretion of the Court and the parties involved.

"Senate Bill 125 makes provision for the appointment of a guardian for persons who are senile and who are incapable of handling their own affairs. The law specifically states the purpose of permitting this procedure is to enable recipients to receive funds from the State and/or Federal Governments without the necessity of a lunacy trial. If after such a guardian has been appointed the guardian dies prior to the death of the recipient, or if for some reason the guardian petitions the Court for discharge, does the Department of Public Welfare have the responsibility of requiring either the appointment of a new guardian, or a statement or certificate, or decree of the Court stating that the person is no longer in need of a guardian? We recognize the fact that since there was no lunacy trial, there would not be an order of restoration of sanity.

"The Department has always considered that it was necessary for us to obtain new Letters of Guardianship or a decree from the Court before future warrants could be issued to the recipient. Can the Department require any official action of the Court before issuing future warrants, or is the Department to consider the recipient in the same position as he was in prior to the appointment of the original guardian without any further action on the part of the Court?"

On October 30, 1942, this department, in Opinion No. O-4949, in answer to an opinion request of Hon. J. S. Murchison, Executive Director, State Department of Public Welfare, construed Senate Bill 125, Regular Session, 47th Legislature of Texas, with respect to guardianships of incompetent persons.

Mr. Murchison's request for opinion was in part as follows:

"Senate Bill 125, Acts of the 47th
Legislature, Regular Session, makes provision
for the types of persons for whom a guardian
may be appointed, enumerating them as ' . . .
minors fourteen (14) years of age or over, per-
sons alleged to be of unsound mind or habitual
drunkards, and persons for whom or for whose
estates it is alleged to be necessary to have
a guardian appointed to receive funds from the
State and/or Federal Government. . .'

"The law makes further provision for
the procedure to be followed in establishing
the necessity for appointment of a guardian in
order that the person may receive State and/or
Federal funds.

"Seante Bill 125, Section 4, also makes
provision for the appointment of a successor
guardian in the event the guardian dies, resigns,
or is removed.

"The question has come before us in the
case of an old age assistance recipient who on
June 20, 1918 was declared mentally incompetent
and a guardian appointed for her. The guardian
filed bond, inventory, appraisal and list of
claims; however, so far as the records show the
guardian did not make any other report to the
Clerk or did not make final accounting. The
guardian is dead, and our recipient, although
still mentally incompetent has been receiving
assistance in her own name for the past three
or four years. It is admitted that she is still
not competent to take care of her own affairs.

"Can the Court appoint a guardian
upon the certificate of the Executive Director
of this Department or his representative as pro-
vided for in Senate Bill 125? If so, is this
guardian responsible for the entire estate of the
recipient or just that particular part which she
receives from the State and/or Federal Govern-
ment? In other words, does the appointment of a

Hon. John H. Winters - Page 4

guardian under Senate Bill 125 for the purpose
of receiving Federal and/or State funds mean
that the authority of a guardian so appointed
is limited to the receipt and expenditure of
the funds received from the State and/or Fed-
eral Government or is the guardian so appointed
responsible for the entire estate.

"Since the person has not been actually
adjudged incompetent, does the guardian have the
authority to act in any respect other than for
the purpose of receiving and expending these said
funds?"

This department in Opinion No. O-4949, written
by Hon. Ocie Speer, Assistant Attorney General, in answer to
Mr. Murchison's request, advised as follows:

"S.B. No. 125 is an amendment of various
Articles of Revised Civil Statutes, 1925, under the
provisions of which undoubtedly the County Court,
having jurisdiction thereof, is authorized to appoint
a guardian of one of unsound mind, when necessary to
receive funds or money due from the State and/or
Federal Government. (Arts. 4116, 4121, 4126 and
4272, as amended in S. B. 125).

"It does not follow from this, however,
that the appointment of a guardian of the incom-
petent's estate is limited to that part of the
estate received or to be received from the State
or the Federal Government.

"There is nothing in the amendment made
by S. B. No. 125 to indicate that the guardianship
of the estate granted because of the necessity
therefor to receive such State or Federal aid, is
other than a general guardianship of the incom-
petent's estate. The liability of the guardian
and his bondsmen upon such letters would extend,
therefore, not only to the moneys received from the
State and/or Federal Government, but likewise to
any other moneys, funds or property whatsoever
owned by the ward.

"In such a case the court may act upon the application of any one interested in the proceeding, including, of course, the Executive Director of your department.

"Under the facts of your immediate case, it would not be necessary to institute a new guardianship proceeding, since a successor may be appointed under Article 4228 et seq of the Revised Civil Statutes."

Article 4123, Vernon's Annotated Texas Civil Statutes, reads in part as follows:

"At a regular term of the Court, after the issuance and service of process as required by law, the Court may proceed to the appointment of a guardian. Before appointing a guardian, the Court must be satisfied:

"1. That the person for whom a guardian is sought to be appointed is either a minor, a person of unsound mind, or an habitual drunkard, or a person for whom it is necessary to have a guardian appointed to receive funds or money due such person from the State and/or Federal Government.

"2. . . . .

"3. . . . .
"4. That the rights of persons or property are to be protected. All issues herein shall be determined by the Court on hearing, unless a jury is demanded; but it shall not be a prerequisite to such appointment that there has been a jury trial, verdict and judgment that the person is of unsound mind, or is an habitual drunkard, nor is such person required to be present at the trail. . . .

"The remedy herein provided is cumulative of that provided in Chapter 12 hereof, for the guardianship of persons of unsound mind and habitual drunkards, and may be resorted to without invoking the latter remedy. As amended Acts 1941, 47th Leg., p. 867, ch. 541, § 2."

Article 4123a, Vernon's Annotated Texas Civil Statutes, reads as follows:

"When a petition is filed for the appointment of a guardian for a person for whom it is necessary to have a guardian appointed to receive funds or money from the State and/or Federal Government, a certificate of the executive head, or his representative of the bureau, department, or agency through which such funds are to be paid, to the effect that the appointment of a guardian is a condition precedent to the payment of any moneys due such persons, shall be prima facie evidence of the necessity for such appointment. Acts 1941, 47th Leg. p. 867, ch. 541, § 6."

Article 4128, Vernon's Annotated Texas Civil Statutes, reads in part as follows:

". . . The guardian of a person of unsound mind, or of an habitual drunkard, shall continue as such, unless sooner discharged according to law, until the ward shall die or be restored to sound mind or to sober habits. The guardian of a person for whom it is necessary to have a guardian appointed to receive funds or money due from the State and/or Federal Government shall continue as such, unless sooner discharged according to law, until the ward shall die or the necessity for having such guardian no longer exists. As amended Acts 1941, 47th Leg., p. 867, ch. 541, § 3."

Articles 4228 and 4229, Vernon's Annotated Texas Civil Statutes, read as follows:

"Art. 4228 - Death, resignation and removal

"When a guardian dies, resigns or is removed, the Court, on application, and without notice or citation, shall appoint another if there be necessity therefor, and such appointment may be made prior to the filing of, or action upon, the final accounting of such former guardian. As amended Acts 1941, 47th Leg., p. 867, ch. 541, § 4.

"Art. 4229. Resignation

"A guardian who wishes to resign, shall present his written application to that effect to the Court, accompanied by a full and complete final account, duly sworn to, shewing the true condition of the estate and of his guardianship. The Court may thereupon immediately accept such resignation and appoint a successor guardian, but shall not discharge such resigning guardian or release him or the sureties on his bond until the entire estate due the ward is delivered to the successor guardian, and final order or judgment shall have been rendered on his final account. As amended Acts 1941, 47th Leg., p. 867, ch. 541, § 4."

We confirm the holding of Opinion No. 0-4949 of this department.

Answering your inquiries it is our opinion:

1. In case of death, resignation or discharge of such a guardian as inquired about, the Court on its own motion, or at the instance of anyone interested in the proceeding, including, of course, the Executive Director of your department, could appoint a successor guardian to whom checks due the ward by your department could be sent.

2. If the court judicially determined by valid court decree that the ward's condition was such that he or she was competent and needed no guardian and said decree terminated the guardianship, it is our opinion that you would then be authorized to send to the former ward such checks as were due him or her from your department.

Approved May 14, 1945
/s/ Carlos C. Ashley
First Assistant
Attorney General

Approved Opinion Committee
By C. W. B. Chairman
WJF:BT:ddt

Yours very truly

Attorney General of Texas

/s/

By

Wm. J. Fanning
Assistant